**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward W. GREENBANK, Defendant-Appellant.**

**No. 73-2503.**

United States Court of Appeals, Ninth Circuit.

Jan. 28, 1974.

Rehearing Denied Feb. 28, 1974.

Larry L. Debus (argued), of Debus, Busby & Green, Phoenix, Ariz., for defendant-appellant.

William C. Smitherman, U. S. Atty., Patricia Whitehead, Ronald A. Lebowitz, Thomas N. Crowe (argued), Asst. U. S. Attys., for plaintiff-appellee.

## OPINION

Before WRIGHT and CHOY, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

The defendant-appellant, Edward W. Greenbank (Greenbank), William T. Laakman and Betty Rose Laakman (the Laakmans) were indicted on one count of violating 21 U.S.C. § 841(a)(1) and (b) [possession with intent to distribute a quantity of a controlled substance] and on one count of violating 21 U.S.C. § 846 [conspiracy].

Greenbank and the Laakmans were jointly tried before a jury on April 17 through 19, 1973, and Greenbank was found guilty on both counts as charged. The district court had Greenbank's motion for judgment of acquittal for both counts under advisement, and thereupon granted the motion as to the possession count and entered appropriate order. Greenbank was sentenced to custody on the conspiracy conviction and appeals. We affirm. Greenbank's assignments of error are consolidated as follows:

1. The district court should have granted defendant's motion for a verdict of acquittal on the conspiracy charge because of the total enmeshment, from beginning to end, of a paid government agent in the criminal enterprise culminating in a denial of due process under the United States Constitution.

2. The cumulative effect of the numerous instances of prosecutorial misconduct throughout the trial constituted plain error and a new trial should have been granted, notwithstanding the fact that defense counsel withdrew his motion for a mistrial prior to closing argument.

3. The sentence imposed by the district court judge was invalid in that it

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

was based on an erroneous and misleading presentence report.

*Assignment of Error 1:*

■ Greenbank candidly concedes in his briefs that the rationale and holding of United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (April 24, 1973) (Russell-Supreme Court), forecloses any defense of entrapment under the facts of this case. In fact, Greenbank states "he never asserted entrapment as a defense." Yet it is fair to note that the jury trial was had during the advent of Russell-Supreme Court and while the rationale and holding of United States v. Russell, 459 F.2d 671 (9th Cir. 1972) (Russell-Circuit Court), was viable. It is manifest from the district court's jury instruction requested by Greenbank and objected to by the government that Greenbank's theory of defense throughout the trial and submission to the jury was based upon the broadened Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, principle of the defense of entrapment as enunciated in Russell-Circuit Court, supra, viz:

> "that a defense to a criminal charge may be founded upon an intolerable degree of governmental participation in the criminal enterprise."

That view or concept makes the essential element of the defense turn on a measuring or calibration of the type and degree of governmental involvement in the criminal venture, rather than absence on the part of the accused a predisposition to commit the crime. It was that very concept that was flatly rejected in Russell-Supreme Court. Furthermore, that authority announced "the defense is not of a constitutional dimension" and dropped "the matter where it was left by the Court in *Sherman*:

> 'The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, "A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." ' Id., [356 U.S.] at 372, [78 S.Ct. 819, 2 L.Ed.2d 848] quoting Sorrells v. United States, 287 U.S. at 442 [53 S.Ct. 210, 77 L.Ed. 413]", 411 U.S. at 434 and 435, 93 S.Ct. at 1644.

"It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play" at 436, 93 S.Ct. at 1645.

It follows then that Greenbank's position on appeal levels with the principal contention urged in Russell-Supreme Court, at 431 and 432, 93 S.Ct. at 1642, namely: "the level of [the government's agent] involvement in the [enterprise] was so high that a criminal prosecution for the [illegal drug traffic] violates the fundamental principles of due process," and he seeks shelter in the Court's observation, "[w]hile we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. Rochin v. California, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183] (1952)."

It appears in the evidentiary record that:

One Gonzalez was a known trafficker in illegal drugs with an arrest record. He had turned informer to the government and received periodic compensation for his services;

Gonzalez had met on several occasions with parties to the enterprise, learned of a proposed $10,000 marijuana transaction and contacted an agent of the United States Customs Service;

Gonzalez infiltrated the enterprise, gave time-to-time progress reports to agents and participated therein to the extent of acting as a carrier of the contraband and money involved; however, he played no part in finding or producing the source or a purchaser of the contraband; and

Greenbank, a Gill and a Conde were active in the enterprise before Gonzalez appeared on the scene and became active, and had not Gonzalez played the role of a carrier other persons were available for that purpose.

Gonzalez was not as Greenbank contends a governmental generated vortex which pulled an innocent into an illegal enterprise, rather he was a small disloyal cog turning within the illegal venture under the power of the predisposed mind and free hands of Greenbank and his co-conspirators. We are satisfied, as was the jury, that Greenbank "was not an unwary innocent" but, indeed, "an unwary criminal."

> "Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of apprehension; if that be so, then the [performance of a service which] the drug ring requires must, as a general rule, also be permissible. For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them. Law enforcement tactics such as this can hardly be said to violate 'fundamental fairness' or 'shocking to the universal sense of justice,' *Kinsella* [361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268], supra." Russell-Supreme Court, 411 U.S. at 432, 93 S.Ct. at 1643.

We conclude that no expressed or implied concept of federal due process was violated by the government in making use of the evidentiary fruits obtained through Gonzalez's government counte-

nanced infiltration and limited participation in the ongoing illegal enterprise. The assignment of error is without merit.

*Assignment of Error 2:*

The prosecutorial misconduct complained of can be broken down into three areas:

a. The display of a hand gun by a government witness and the government attorney in full view of the jury, and testimony of a government witness regarding the same weapon which was exhibited in a photographic exhibit.

b. The prejudicial prosecutor's statement during trial of "fear for [Gonzalez's] life," and

c. Prejudicial statements during closing argument of the prosecutor in praise of Gonzalez.

Area a: The gun and photograph proved to be utterly immaterial to the charges and were refused admission in evidence. The courtroom appearance and use of the articles were the subjects of a defense motion for a mistrial. However, before a ruling thereon defense counsel advised the district court,

> "I'm in a most difficult situation. I feel compelled to withdraw the motion for mistrial for the reason that the jury which we have, the complexion of the case at the present time, I think is as beneficial to my client as I could ever have it.
>
> "However, I don't think, although there are cases on mistrials, and not being able to refile the case and try it again, I don't think this case is at this time in that complexion. So I have consulted with co-counsel. I have consulted with my knowledgeable law clerk, and I would ask the clerk if I may withdraw my motion for mistrial, much as I would—"
>
> "THE COURT: Very well. The motion for mistrial is withdrawn.
>
> "Now when it comes time to instruct the jury, do you want me to make any reference to it, and to tell them the

gun has nothing to do with the case, and that they are to disregard it entirely?"

Area b: The prosecutor's statement of "fear for his life" entered the record during cross-examination of government witness Gonzalez as follows:

"Q. Okay. And where are you staying here while you're here?"

"[PROSECUTOR:] Objection, your Honor. This man is an informant."

"Q. Are you staying with Mr. Seaver? [Customs Service Agent.]"

"[PROSECUTOR:] There is possible fear for his life."

"[COUNSEL:] I'll withdraw it."

"[PROSECUTOR:] I am going to object."

"THE COURT: Sit down. Sustained."

"[COUNSEL:] I move for a mistrial on the comments of the prosecutor your Honor.

"Your Honor, I'll withdraw the motion for mistrial. I don't want to go through that."

"THE COURT: Very well, proceed."

■ Greenbank concedes that the voluntary withdrawal of the motions for mistrial forecloses him of an appealable order for assigned error. However, he would fault the district judge for plain error in not sua sponte declaring a mistrial on the very grounds he had expressly abandoned during trial. We understand the reasons for hindsight judgments, but scorn such double dealing on the district court.

■ Area c: The tenor of some of the statements of the prosecutor during closing argument are challenged as being of high prejudicial scale. It is fair to say that in the course of the argument Gonzalez was applauded for his prior service to law enforcement officers, his effectiveness as an informer was complimented and his help in controlling drug traffic was commended. However, we are mindful that closing argument was a reply to defense counsel's argument wherein Gonzalez was bitterly characterized as "a rat." As most trial lawyers know, advocacy is not bound to wearing kid gloves or pulling punches.

We are content to state that the relevant evidence in the record was sufficient to support the inferences respective counsel in advocacy urged the jury to accept.

■ Greenbank also complains in his reply brief about the following closing argument comment:

"All you're concerned with is whether the people here are guilty or not guilty, because counsel knows if we went into other facts concerning the activities of Gill and Conde, it would ·be outside the record and it would be objectionable, *so we're not going to tell you all the things we know about them because we can't.*"

Whether this reference was based upon the prosecutor's personal knowledge apart from evidence in the record as dealt with in Orebo v. United States, 293 F.2d 747 (9th Cir. 1961), is beside the point. Manifestly, the reference is not as to probable guilt of Greenbank as it deals with conduct of Gill and Conde and not Greenbank.

We conclude that while the challenged prosecutor's statements, tactics and conduct are seemingly unexplainable, they in compounded effect do fall short of a bane of a fair trial for Greenbank. See Todorow v. United States, 173 F.2d 439 (9th Cir. 1949); cf. United States v. Cumberland, 200 F.2d 609 (3rd Cir. 1952), and Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 169, 90 L.Ed. 1557 (1946).

To fault a district court for record plain error on an issue of law is one thing, but to fault on undisclosed and vague possible prejudicial jury exposure to irrelevant evidence and counsel's statements is quite another. The district court has wide discretion from his ringside observation to act and conduct an orderly fair trial for an accused. We note from the record timely and direct judicious warnings and admonitions to the jury following each of the incidents.

We determine from our perusal of the record that there is an abundance of evidence of Greenbank's guilt and no substantial right of Greenbank was adversely affected as challenged and urged in assignment of error 2. The record is free of plain error.

*Assignment of Error 3:*

The record discloses that defense counsel examined the presentence report and made independent inquiry of sources. The district court heard counsel's objections to and explanation of reported material. The record is devoid of any fact which was not relevant in the determining of the discretionary and lawful sentence entered. The assignment is without merit.

Affirmed.