**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ardis Ray CASH, Defendant-Appellant.**

**No. 74–1015.**

United States Court of Appeals, Ninth Circuit.

June 20, 1974.

Stephen Chase, Huntington Beach, Cal., for defendant-appellant.

Darrell W. MacIntyre, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT and KILKENNY, Circuit Judges, and McGOVERN,* District Judge.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

Appellant was convicted by a jury of bank robbery and the use of a dangerous

---

* Sherre remains convicted on Counts 9, 10, 11 and 15 and Joyce on Counts 1, 8, 9, 10, 11 and 15.

* Of the Western District of Washington.

weapon therein [18 U.S.C. § 2113(a), (d)]. On this appeal he argues that the evidence was insufficient to support the verdict and that conduct of the prosecutor was so grossly improper and prejudicial as to deprive him of a fair trial. The evidence was clearly sufficient, and we shall discuss only the appellant's second contention.

The government's evidence showed that appellant Cash and five other men met in a Los Angeles apartment in June 1972 to plan the robbery of a national bank. One of the group was employed at the bank as a security guard, and he supplied a diagram showing the interior of the bank and other information. Most of the robbers wore stocking masks and left no fingerprints when they left the bank with more than $16,000. Surveillance pictures taken within the bank and later introduced in evidence showed several of the participants, including the appellant who wore a stocking mask, white trousers, blue jacket, and cap. He was stationed near the front door.

Although the robbers escaped, extensive police work finally located one in Brooklyn, New York, and another in Waco, Texas. Each participant, including the bank guard, had received his share of the loot, about $3,000. Thirteen months after the robbery, on August 2, 1973, Los Angeles police officers arrested the appellant, who was then using the name "David Randles." Being duly advised of his rights, appellant identified the other participants shown in the surveillance photographs and stated that each knew him as "Cash."

On direct examination, testifying on his own behalf, appellant denied complicity in the bank robbery, asserted that he had never been convicted of a misdemeanor or felony, had had 15 years of schooling, including some college, and had an alibi for the date and hour of the robbery. He testified that he was visiting in his brother's home at that time. During his cross-examination there oc-

curred two incidents which, he asserts, were prosecutorial misconduct requiring a new trial. Three other incidents occurred during final argument to the jury.

*Incident No. 1, on cross-examination:*

The prosecutor asked appellant, "Why did you have identification for David Randles?"

The defendant responded,

"Well, the reason that I had identification for David Randles, a fellow had got me—at least—I phrased that wrong. He told me that I could get this job at West Light Company on Main, but I couldn't have no prior arrest record. I have a prior arrest record here in Los Angeles. So I was arrested for narcotics on July 4, 1972. I was arrested sometime not too long ago with a fellow on a burglary charge, but he indicated to the authorities he had just picked me up from the dentist's office, which I could verify at any time, and that I did not know anything about what he was participating in."

This answer, somewhat unresponsive and taken together with his direct testimony, caused the prosecutor to ask,

"As a matter of fact, you drove the car that was parked outside the liquor store when he went in and stole some liquor; is that not a fact?"

The defense counsel objected and moved for mistrial; the court sustained the objection and directed the defendant not to answer the question, but he answered, "No, I didn't." The motion for mistrial was not granted.

The prosecutor admonished the defendant,

"Just answer my questions. Don't go off in an unrelated field." Shortly thereafter, his own counsel stated, "Your Honor, I'm going to admonish Mr. Cash to answer the question and don't volunteer."

*Incident No. 2:* On further cross-examination of the appellant, the following transpired:

"Q. When Officer Davenport asked you when he interviewed you on August 2, 1973, whether you committed this robbery or not, what did you tell him?

"A. Well, I told him that I didn't. Yes, I remember I didn't. To my best recollection, I believe that I told him I didn't, and which I didn't. And I wouldn't have no reason to admit to it.

"Q. As a matter of fact, Officer Davenport asked you if you committed three robberies, one on August 21st, one on August 23rd, and this robbery?

"MR. TALCOTT: I'm going to object to that and ask for a mistrial at this time, your Honor.

"THE COURT: The jury is admonished to disregard the question and his objection is sustained."

*Incident No. 3, during final argument:*

A witness for the prosecution, Willie Warner, testified that he had pleaded guilty to the bank robbery. He had identified the other participants from the surveillance photographs and testified that Cash, armed with a gun, stood near the front door of the bank as a lookout. He was either unable or unwilling to identify the appellant in the courtroom and, on redirect examination, intimated that a threat had been made against him by jail inmates while he was waiting to testify.

In argument to the jury, the prosecutor stated:

"Mr. Matthews participated in this robbery. Mr. Warner who uses narcotics—and I believe from Mr. Cash's testimony, he testified to you ladies and gentlemen that he used narcotics during this period of time himself—I believe that when Mr. Warner said, 'I can't say for sure whether that's the man,' when M. Talcott had him stand up, I can believe that Mr. Warner—probably there was a little question in

his mind because, he too, we can assume, was probably under the influence of some kind of narcotics when they robbed this bank.

"MR. TALCOTT: I'll object to that your Honor, as not being in evidence and prejudicial.

"THE COURT: Well, it's argument of inferences which counsel is seeking to have the jury from evidence which is in. I think it's argument.

"Overruled."

Appellant argues there was no evidence that Warner or the appellant was under the influence of narcotics at the time of the robbery.

The other two incidents relied upon by the appellant as constituting prosecutorial misconduct took place during the prosecutor's argument to the jury. We have considered them individually and collectively and conclude that they were within the realm of permissible argument and not prejudicial. We proceed to analyze the three incidents related above.

Prior to Incidents No. 1 and 2, appellant had demonstrated that he was an unresponsive witness. Twice his counsel admonished him to speak more loudly. He volunteered information which was not asked for and he evaded some questions. He admitted that he was a heroin user and was under the influence of narcotics on July 3, 1972, the date of the bank robbery. With reference to the interview by the Los Angeles police officer, he disputed much of the officer's testimony and evaded other questions about that interrogation. But, he admitted that he had given the officer the name "David Randles."

█ In light of what had gone before, the prosecutor's question, "Why did you have identification for David Randles?" was not improper. It did not invite the lengthy response by the defendant, of which he now complains, and did not contemplate a revelation of arrests for burglary and narcotics violations.

The prosecutor's succeeding question was improper. Indeed, it was an argumentative statement, not in proper form:

"As a matter of fact, you drove the car that was parked outside the liquor store when he went in and stole some liquor; is that not a fact?"

The trial judge acted promptly, sustained an objection before it was even made, and directed the witness not to answer. But the witness had already responded with a denial.

On review, we must look at this and the other actions complained of in light of all of the testimony introduced in a three-day trial, the exhibits in the case, the court's instructions to the jury, and the trial judge's own appraisal. The district judge characterized the evidence as "almost insurmountable." In light of the overwhelming evidence of guilt, the prosecutor's question could not have affected the jury's verdict. The error was, therefore, harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see* United States v. Fernandez, 497 F.2d 730 (9th Cir. 1974); United States v. Polizzi, 500 F.2d 856 (9th Cir. April 30, 1974).

We consider Incident No. 2 to be more serious. There was no foundation for the inquiry about three robberies, two of them unrelated to the crime charged. The police officer had referred to no such inquiry of the defendant, and we are left to speculate as to any possible purpose for the question.

We note, however, that prompt objection was made, together with a motion for mistrial. The court's admonition to the jury was prompt. The incident was not referred to again, although defense counsel moved for a new trial on other grounds. We conclude that under the circumstances of this case the court's admonition to the jury served to correct the impropriety. *See* Donnelly v. De-Christoforo, 416 U.S. 637, at 644, 94 S.. Ct. 1868, 40 L.Ed.2d 431 (1974).

Incident No. 3, the reference to the use of narcotics by Warner and Cash, was not prejudicial. Appellant Cash already identified himself as a heroin user and had testified on direct examination that he used narcotics on the date of the robbery, while he was visiting his brother's home. A witness for the prosecution, Billy Wayne Matthews, one of the other bank robbers, had testified that Cash was using drugs prior to the robbery. True, there was no evidence that Warner used drugs, but the reference to him in the course of argument could not possibly have had any effect on the jury or its verdict.

We have examined the record with care and conclude that the defendant had a fair trial. It was not a perfect trial and, as might be expected in a major felony case, there were errors by both counsel. But none was of constitutional magnitude.

The conviction is affirmed.