UNITED STATES of America, Plaintiff-Appellee,

v.

Larry William PRATT, Defendant-Appellant.

No. 74–1859.

United States Court of Appeals, Ninth Circuit.

Jan. 26, 1976.

Jerome S. Stanley, Sacramento, Cal., for defendant-appellant.

Darrell W. MacIntyre, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee; William D. Keller, U. S. Atty., and Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., on the brief.

## OPINION

Before LUMBARD,* ELY and WRIGHT, Circuit Judges.

LUMBARD, Circuit Judge:

Larry William Pratt appeals from his conviction on October 25, 1973, for two bank robberies with a dangerous weapon, 18 U.S.C. § 2113(a) and (d), after a jury trial in the Central District of California. He claimed that errors at his trial in the admission of evidence and misconduct of the prosecutor required a reversal of the verdict. The panel which heard the appeal held, on March 10, 1975, with one judge dissenting, that two errors in the conduct of the trial required a new trial: the exhibition to the jury of a gun during the examination of a witness and the failure to allow preliminary examination of an expert witness regarding photographic evidence, all of which was eventually stricken. Thereafter, the government moved for a rehearing. Upon further consideration we grant the motion for a rehearing, vacate the opinion of the Court filed on March 10, 1975, and affirm the convictions.

The government produced substantial direct evidence that Pratt was the robber of the Bank of America branch in Santa Fe Springs, California, at about 11:30 a.m. on June 6, 1973, and that shortly over an hour later, at about 12:40 p.m., he was also the robber of the Crocker National Bank Branch at Garden Grove, California.

Rosemary Arambel, a teller at the Bank of America, testified that Pratt walked up to her counter, placed an envelope on the counter, pointed a blue, square automatic pistol at her and said: "This is a robbery. I have a gun." As Miss Arambel was taking money from the cash drawer, he added: "Hurry up, all your money, 5's, 20's, everything." Pratt took up the bills, which a later audit showed totalled $1,691.00, and walked out of the bank's front entrance. As he turned to leave, Miss Arambel activated the bank's camera. The man photographed by the camera was identified as Pratt by Patricia Lackey, a woman who had known him for three years and who was the owner of the 1968 Plymouth in which Pratt got away. Miss Patricia Alvarez identified Pratt as the man who ran past her and across the parking lot immediately after the robbery, carrying a handful of money. She saw Pratt enter the passenger side of the Plymouth automobile and drive away.

Approximately one hour later and 24 miles away, a man entered the Crocker National Bank at Garden Grove, California,

---

* The Honorable J. Edward Lumbard, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

stood in line for several minutes and then, when he reached the window of teller Ramona Ramirez, pointed a gun at her and said: "Give me your money." At trial, Miss Ramirez indicated Pratt as the man who scooped up and then left the bank with $2,313.00 in bills which she had placed on the counter. Five days later, on June 11, Pratt, who had not been working steadily, paid Danny Hudgens $1,000 in cash as a down payment on a motorcycle.

Pratt complains that the prosecutor exhibited a gun in violation of an order of the trial judge and that this was prejudicial. We disagree.

Prior to impanelling the jury, the defendant moved to suppress the loaded .32 caliber automatic pistol which was found in a search conducted upon Pratt's arrest in a bedroom of a cottage in Tahoe Pines, California, on June 29, 1973. The district court denied the motion but instructed the prosecutor that he was neither to display the gun to the jury nor mention it in his opening statement; the trial judge further stated that he would rule on the admission of the gun "when we get to it" . . . "as it has to be identified in some way."[1]

After the first witness, Rosemary Arambel, had described the events of June 6, 1973 and the defendant Pratt at some length, the prosecutor said: "May the clerk place in front of the witness government's exhibit No. 2?". The record shows that the gun exhibit was placed before the witness, with no objection from the defense. Miss Arambel then testified that the weapon looked "similar to the weapon" that was pointed at her by the defendant. Cross-examination began with no request for a recess, no motion for a mistrial and no request for a side bar conference. On cross-

examination, Miss Arambel was questioned about the gun, how the defendant held the gun at the time of the robbery and then hid it under his jacket and about the difference between revolvers and automatic pistols.

It was not until defense counsel had nearly completed his examination of Miss Arambel—some thirty pages of transcript later—that he reminded the court of its earlier ruling that the prosecutor was to be careful about identifying the gun and was not to wave it around in front of the jury. This statement and what follows occurred in the absence of the jury. Judge Stephens then revealed that he had been surprised at the production of the gun and, addressing the prosecution, said:

"I told you, positively, that you were not to show that gun to any of the witnesses until after there had been sufficient identification of it from what they described to make it possible for them to identify the gun as the one that was used in the robbery."

The Assistant United States Attorney explained that he had misunderstood the entire thing. Judge Stephens nonetheless responded that the jury would be instructed "that the only purpose that there was in showing that gun to the jury is to simply make the difference between a revolver and an automatic pistol." At this time defense counsel made no request and the jury was called back.

The gun was not displayed again; it was never received in evidence. In his charge several days later, the trial judge instructed the jury that the gun was displayed for illustrative purposes only and that there was no evidence to connect the gun displayed with the defendant.[2]

---

1. The trial judge was concerned about the government's ability to establish the relevance of a gun found three weeks after the commission of the robberies. The court accordingly instructed the United States Attorney to avoid prejudicing the defendant's rights by prematurely displaying the gun before having laid a proper foundation for its admission.

2. "Now, you will recall that early in the trial when Mr. MacIntyre was asking questions of a

witness with respect to the gun, which they mentioned, he used two terms: revolver and pistol. And there was exhibited to the jury a pistol, an automatic pistol. This was done to clarify the testimony of the witness, the questions of lawyers and to clarify the matter for the sake of the jury to show that when the witness testified as to what kind of gun was used, it was an automatic pistol, such as you were shown. However, there was no evidence in this case, which in any way connects that

■ We do not think it can fairly be claimed that there was deliberate misconduct on the part of the prosecutor in his use of the gun which requires a reversal of the conviction. It is apparent that defense counsel did not consider the use of the gun to be a serious matter. When the prosecutor said "May the clerk place in front of the witness [Arambel] Government's Exhibit No. 2?" he gave fair notice and an opportunity to the defense to make any objection outside the presence of the jury. The defense did nothing at this point and the prosecutor and defense counsel proceeded, as we have stated above, with questions put to the witness about the gun. It was only when the examination of Miss Arambel had concluded that counsel thought to gain some advantage by referring to the colloquy at the preliminary hearing. As the afterthought came too late, as the gun had not been put to an improper use, and as any possible prejudice was minimal at most, Judge Stephens in the proper exercise of his discretion thought it quite sufficient, as we do, to instruct the jury regarding the limited relevance of the testimony regarding the gun.

■ We turn now to the error claimed in the refusal of the trial judge to require that the government make an offer of proof, out of the jury's presence, regarding the evidence to be given by Joseph M. Avignone, an FBI photographic identification expert. The intended thrust of Avignone's testimony was to point out similarities in the features of the man photographed by the Bank of America's surveillance camera and a police photograph of Pratt. Defense counsel's cross-examination successfully challenged Avignone's qualifications. As a result, the trial judge struck the testimony of the witness and directed the jury "to disregard it

entirely just as though it had not been interjected into the case." Since the jury subsequently heard Patricia Lackey testify, on the basis of her personal acquaintance with Pratt, that the man photographed by the bank camera was the defendant, Avignone's testimony was only cumulative at most and the curative instruction adequately purged any prejudicial impact.[3]

■ We also hold that there was no error in denying the defendant's request that the trial be postponed. As the counsel first appointed to represent Pratt was present throughout the trial and assisted counsel who was substituted the day before the trial commenced, Judge Stephens acted well within his discretion in denying any further postponement.

■ Finally, the impeachment of Pratt by eliciting from him an admission of a prior felony conviction, battery against a California Highway Patrol Officer, was in accordance with the established rule in the Ninth Circuit. *United States v. Haili*, 443 F.2d 1295, 1298–1299 (1971); *United States v. O'Day*, 467 F.2d 1387 (1972). *Cf.* Rule 609(a) Rules of Evidence, effective July 1, 1975.

We have examined the other claims of error and find them to be without merit.

Convictions affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. While I must concede that the arguments made by the Government in its Petition for Rehearing are far more persuasive than those earlier made by the prosecution, I cannot join Judge Wright in his defection from our original majority opinion. In retrospect, I

---

particular gun with the defendant or identifies it as having been used in the robbery, and you must bear that in mind. In other words, it was for illustrative purposes only."

**3.** In *United States v. Brown*, 501 F.2d 146, 150 n. 1 (9th Cir. 1974) decided eight months after the trial of this case, the Ninth Circuit noted that the admission of expert testimony as to broad physical resemblances between the defendant and a poor quality surveillance photo-

graph "would be error, perhaps prejudicial, depending upon the state of other evidence." However, under the circumstances of this case, Judge Stephen's order to strike Avignone's testimony, coupled with the substantial amount of other evidence directly inculpating Pratt, convinces us that this defendant was not disadvantaged by the trial judge's failure to require an offer of proof.

can acknowledge that our original opinion, written by me, was too severe in its criticism of the prosecutor and should have attributed to the district judge more of the responsibility for the regrettable impropriety with respect to the display of the inadmissible weapon.

The sole issue in Pratt's trial was his identification as the robber, and the Government's principal evidence against him consisted of eyewitness testimony from bank employees and customers. As is often true of eyewitness identifications in bank robbery trials, the identifications of Pratt were not entirely free from question. In defense, Pratt called several alibi witnesses, all of whom were either his relatives or close friends. The task for the jury was the difficult but common one of assessing the relative credibilities of different witnesses giving contradictory testimony.

Among Pratt's contentions on this appeal are well-founded claims of both prosecutorial misconduct and error in the trial judge's admission against Pratt of so-called "expert" testimony concerning photographs taken, during the robbery, by bank surveillance cameras. My review of the record convinces me that because the other evidence in the trial had created a close question for the jury, and because of the particularly prejudicial display to the jury of the gun, I cannot in good conscience agree, with fair assurance, that the jury's decision was not impermissibly swayed. See *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

### The Display of the Gun

When agents of the Federal Bureau of Investigation (FBI) arrested Pratt, they seized a loaded .32 caliber pistol from a nightstand that was near the bed in which he had been sleeping. Prior to trial, Pratt moved through his retained attorney to suppress the weapon, arguing that the Government could not prove any connection between the weapon and the robbery. As the trial began, the trial judge stated that it was his view that the weapon was not admissible and should not be displayed. He also said, however, somewhat ambivalently, that he would reserve his ultimate ruling on admissibility. The following colloquy occurred at the bench, outside the jury's hearing:

THE COURT: I don't see how you are going to be able to have a teller or somebody like that sufficiently identify a weapon. I am not saying that you can't do it, but when you lay the foundation for that, why, I think you ought to proceed by having them describe it some way.

THE PROSECUTOR: Well, they have all seen it prior to testifying and they say it looks similar. They can't say it was the exact gun. The point is he was arrested on the 29th and that is less than three days after the robbery, with a loaded revolver. I think it is relevant.

THE COURT: I don't think so. I don't think that is a sufficient foundation for the introduction of it.

After some other discussion, the trial court warned the prosecutor:

THE COURT: Yes, let's proceed. Proceed carefully without displaying it to the jury, and that is a caution.

THE PROSECUTOR: I won't mention it in my opening statement.

THE COURT: Yes, don't mention it [the gun] in your opening statement. When we get to it, I will make a ruling on it.

THE PROSECUTOR: Well, it is coming up.

THE COURT: I will excuse the jury before you offer it.

THE PROSECUTOR: Okay.

Notwithstanding the judge's explicit instructions, the prosecutor, when questioning the prosecution's first witness only a short time later, openly and obviously displayed the gun to the witness, in the full view of the jury, and began to question the witness about the weapon. While I can hardly believe that the court's explicit admonition as to the display of the weapon confused the prosecutor, it is possible that such was true. As he later chastised the prosecutor, the trial judge indicated that he thought he had

made it clear that the gun should not have been displayed:

THE COURT: I told you, positively, that you were not to show that gun to any of the witnesses until after there had been sufficient identification of it from what they described to make it possible for them to identify the gun as the one that was used in the robbery.

Even if it is assumed that the prosecutor was, as he later explained, genuinely confused by the trial judge's statements, the exercise of reasonable caution should have required him, at a minimum, to request a definitive ruling before commencing an inquiry in respect to the gun in the presence of the jury.[1] Instead, the prosecutor placed a piece of highly inflammatory, but apparently inadmissible, evidence before the jury in direct contravention of the trial judge's clear direction that such should not be done.[2]

I choose to believe that the prosecutor only momentarily forgot that his solemn duty is "to seek justice, not merely to convict." ABA Standards, The Prosecution Function § 1.1(c). Nevertheless, we cannot too often remind the Government's attorneys, as we so recently did in *United States v. Polizzi*, 500 F.2d 856, 892 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), of Justice Sutherland's

---

1. Even absent the clear instructions given by the judge in this case, the prosecutor should not have displayed the gun, which was the subject of an outstanding motion to suppress, without first asking that the jury be excused. *See* ABA Standards, The Prosecution Function § 5.6(d):

    "It is unprofessional conduct to tender tangible evidence in the view of the judge or jury if it would tend to prejudice fair consideration by the judge or jury unless there is a reasonable basis for its admission in evidence. When there is any doubt about the admissibility of such evidence it should be by an offer of proof and a ruling obtained."

    To the same effect, *see* American College of Trial Lawyers, Code of Trial Conduct, 19(g).

    The Advisory Committee commentary to ABA Standards, The Prosecution Function § 5.6 states:

    The premature display of a tangible article in the courtroom may be unduly inflammatory even though it is later admitted. Hence, such an article should not be exposed to view until it is formally offered for admission in evidence. Moreover, the offer must be made in good faith. If there is any doubt as to the admissibility of the article, the display and tender should be made outside the presence of the jury.

    ABA Standards, The Prosecution Function § 5.6, comment *c* at 122 (Tent. Draft, 1970). *See generally* Poirier, *The Federal Government Lawyer and Professional Ethics*, 60 A.B.A.J. 1541 (1974).

2. As the majority points out, Pratt's attorney failed either to object or move for a mistrial when the prosecutor displayed the gun to the jury. Only after the defense counsel had cross-examined the Government's first witness about her statement that the gun was similar to the one used in the robbery did he bring to the court's attention the prosecutor's disregard of the court's earlier instructions, and even then he did not request a mistrial. The judge stated that he "was never so surprised in his life" as when the prosecutor displayed the gun, and he soundly rebuked the prosecutor; however he did not, *sua sponte*, order a mistrial. Since I would rest my decision in this case on cumulative error, I would find it unnecessary to hold that the judge, at that time, committed plain prejudicial error.

    The majority makes much of defense counsel's failure to move for a mistrial. However, as any experienced trial lawyer knows, the question of whether to move for a mistrial often presents defense counsel with a serious dilemma. If he makes such a motion in the presence of the jury, as he sometimes must, he risks emphasizing the disputed evidence in the minds of the jury. Moreover, there is a risk that some jurors may take personal offense, to the disadvantage of the defendant, at the suggestion that they are not capable of following a curative instruction to disregard evidence they have already heard. Thus, where the error is palpably egregious, the failure of defense counsel to move for a mistrial should be treated with some liberality.

    I also note that although the trial judge did instruct the jury that the gun was shown for illustrative purposes only and there was no evidence to link the gun to the robbery, he did not do so until the end of the trial, as a part of his final comments before the jury retired to deliberate. It is almost inconceivable, however, that any attempted curative instruction could have erased so dramatic an image as a firearm from the minds of all the jurors. *See Thomas v. United States*, 363 F.2d 159, 162–65 (9th Cir. 1966). Most assuredly, such an instruction given belatedly, at the close of the trial, is less likely to do so than would one rendered immediately after the occurrence of such grossly prejudicial misconduct.

classic description of their role in criminal prosecutions:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). *See also Singer v. United States*, 380 U.S. 24, 37, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); *United States v. DeLoach*, 504 F.2d 185 (D.C.Cir. 1974); *United States v. Smith*, 500 F.2d 293 (6th Cir. 1974); *United States v. White*, 486 F.2d 204 (2d Cir. 1973), *cert. denied*, 415 U.S. 980, 94 S.Ct. 1569, 39 L.Ed.2d 876 (1974); *United States v. Le-Fevre*, 483 F.2d 477 (3d Cir. 1973).[3]

Forthrightness compels me to say that the trial judge bears a major portion of the responsibility for this regrettable error. Though the judge later expressed surprise, he should have been alert to the violation of his directions about the display of the gun at the very instant that the violation first occurred.

Wherever the blame may lie for what occurred, the ultimate result was that a piece of highly inflammatory evidence, ultimately held inadmissible, must have made an indelible impression upon the minds of the jurors in a case wherein the issue of guilt was very close. In my view, the trial judge's curative instruction could not possibly have obviated such serious prejudice.

### Photographic Identification

Pratt's attorney moved the court to require the Government to make an offer of proof as to the proposed testimony of one Avignone, an employee of the FBI's photographic laboratory. The judge denied the motion and permitted Avignone to testify as an expert on photographic identification. Avignone testified at great length, on direct and cross-examination, about what he perceived to be similarities in the physical features of the robber depicted in the surveillance camera photographs and the features of the appellant. Yet the surveillance photos were of poor quality, and the only articulable characteristics concerning which Avignone could testify were such broad generalities as the two individuals' hairlines, eyebrows, chin shapes, earlobes, weight, and build. These observations were not beyond the common experience of the jury and hence were not proper subjects for expert testimony. *United States v. Burke*, 506 F.2d 1165 (9th Cir. 1974) *cert. denied*, 421 U.S. 915, 95 S.Ct. 1576, 43 L.Ed.2d 781 (1975); *United States v. Brown*, 501 F.2d 146, 148–50 (9th Cir. 1974); *United States v. Trejo*, 501 F.2d 138, 143 (9th Cir. 1974).

After Avignone testified, the trial judge granted Pratt's motion to strike all of the expert's testimony, but the jury had already heard at length of Avignone's qualifications as an FBI specialist and his observations about the similarities between Pratt's and

---

**3.** In recent months, our court has been compelled to consider a distressing number of appeals in which there were substantial allegations of prosecutorial misconduct. *See, e. g., United States v. Bashaw*, 509 F.2d 1204 (9th Cir. 1975); *United States v. Polizzi*, 500 F.2d 856, 889–92 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Cash*, 499 F.2d 26 (9th Cir. 1974); *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974); *United States v. Fernandez*, 497 F.2d 730, 735 (9th Cir. 1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1423, 43 L.Ed.2d 670 (1975); *United States v. Gerard*, 491 F.2d 1300 (9th Cir. 1974); *United States v. Greenbank*, 491 F.2d 184 (9th Cir.), *cert. denied*, 417 U.S. 931, 94 S.Ct. 2462, 41 L.Ed.2d 234 (1974); *United States v. Perez*, 491 F.2d 167 (9th Cir.), *cert. denied sub nom., Lombera v. United States*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974).

the robber's characteristics. I cannot agree with the majority that the trial judge's curative instruction adequately purged Avignone's testimony of its prejudicial impact. In *United States v. Brown, supra* at 150 n. 1, our court noted the potential for prejudicial error in such testimony, and in light of the other circumstances in this case, I would hold that such error occurred here. The trial judge should have granted Pratt's motion for an offer of proof as to Avignone's contemplated testimony. *Brown* requires that

> when a party seeks to introduce expert testimony on personal photographic identification—whether to prove *or* disprove similarity, he should first be required to make an offer of proof to the court outside the presence of the jury.

501 F.2d at 149. (Emphasis in original).

In fairness, Pratt deserves a new trial. Accordingly, I would reverse.