**UNITED STATES of America, Appellee,**

v.

**Melvin FULTON, Appellant.**

**No. 76–1690.**

United States Court of Appeals, Ninth Circuit.

March 8, 1977.

Philip A. DeMassa, San Diego, Cal., argued, for appellant.

Terry J. Knoepp, U. S. Atty., John P. Boyl, Asst. U. S. Atty., argued, San Diego, Cal., for plaintiff-appellee; John P. Boyl, Asst. U. S. Atty., San Diego, Cal., on the brief.

Before ELY and ANDERSON, Circuit Judges, and SOLOMON, District Judge.*

## OPINION

ELY, Circuit Judge:

Fulton was convicted in a jury trial of one count of conspiracy to import heroin and of one count of the importation of heroin. 21 U.S.C. §§ 952, 960, 963. The District Court sentenced the defendant to the custody of the Attorney General for two ten year terms of confinement, the sentences to run concurrently. We affirm.

In the early morning of October 16, 1975, Jose Cruz Torres-Vasquez ("Torres") approached the San Ysidro port of entry into the United States from Mexico. During a routine search of Torres' vehicle, a customs inspector located a package underneath the rear seat. A subsequent field test confirmed the substance of the package as heroin. The inspector then searched Torres and found a slip of paper in his wallet upon which were written the directions to a Ramada Inn motel in Los Angeles, the telephone number of the motel, and "Room 503". Eventually, Torres told agents of the Drug Enforcement Administration ("DEA") that he had been solicited to convey the heroin across the border and to deliver it to a man staying in Room 503 of the motel. Charro hats that he had with him were to serve as a recognition symbol.

Torres agreed to cooperate with the DEA in making a controlled delivery of the heroin to the designated room at the motel. While waiting for Torres to arrive, DEA agents initiated surveillance of the motel's

* Honorable Gus J. Solomon, Senior United States District Judge, Portland, Oregon, sitting by designation.

fifth floor. During this time these agents observed a female enter and leave Room 503 on several occasions.

Torres eventually arrived at the motel, parked his vehicle in the motel's parking lot, gathered up the charro hats, and proceeded to Room 503. Fulton responded to Torres' knock, whereupon Torres gave Fulton the hats and told Fulton that he, Torres, had something for Fulton in the car. Torres and Fulton left the room and took the elevator down to the parking lot. At this point, agents on the fifth floor observed the woman leave Room 503 and enter Room 507.

Upon reaching Torres' vehicle, Torres climbed into the driver's seat (apparently for the purpose of releasing the hood latch), while Fulton moved to the front of the vehicle where the hood was located. Agent Miller testified at trial that Fulton then placed his hands on the trunk and reversed his palms as if he were about to open it. Fulton, in any event, never opened the trunk. Looking up and observing agents beginning to converge upon the scene, he began to walk away. Agent Miller thereupon made the arrest.

Immediately after the arrest Torres told Agent Lunsford that he had noticed that the bathroom door in Room 503 had been closed. Agent Lunsford knew that agents had observed a female entering that room on several occasions, but he did not know that the woman had departed the room immediately after Torres and Fulton had left for the parking lot. Agent Lunsford proceeded to Room 503 believing strongly that someone might still be in the room, announced himself, and then effected a warrantless entry. While in the room, Lunsford seized various items in plain view which were subsequently introduced at trial to lend circumstantial credibility to the unsupported testimony of Torres.

During the trial, Agent Miller testified that, at the time of the arrest, Fulton expressed relief that Miller was a policeman because he thought he was being robbed. Miller also stated that Fulton had disavowed any knowledge of Torres or of what was contained within the vehicle. Miller's written notes differed slightly, however, reciting only that Fulton stated that he had just met Torres in the hallway and that he did not have anything to do with him. Miller's notes also did not mention that Fulton had placed his hands upon the trunk of Torres' vehicle.

## I. The Warrantless Search

The District Court properly denied Fulton's motion to suppress evidence seized from the motel room on the authority of *United States v. McLaughlin,* 525 F.2d 517 (9th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976). The extensive surveillance of the fifth floor of the motel, coupled with information supplied by motel maids, revealed the involvement of two persons, Fulton and the unidentified female. The record clearly established that Agent Lunsford believed that the woman might still be in Fulton's room and that there existed the definite possibility of the destruction of incriminating evidence; hence, exigent circumstances justified the entry. *See id.* at 521. *See also, United States v. Guidry,* 534 F.2d 1220, 1223 (6th Cir. 1976).

## II. Prior Conviction

Fulton's counsel moved *in limine* to establish the excludability of a prior narcotics conviction. The District Court denied the motion. Ultimately, Fulton did not testify during the trial and, therefore, the prosecution did not introduce the prior conviction. Since Fulton never testified, he is in no position now to challenge the District Court's preliminary ruling. *United States v. Murray,* 492 F.2d 178, 197 (9th Cir. 1973), *cert. denied,* 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974); *United States v. Walters,* 477 F.2d 386, 389 (9th Cir.), *cert. denied,* 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973).

## IV. Prosecutor's Comments

Fulton urges that he was denied a fair trial because of two comments made by the prosecutor during closing argument.

**1328**

First, in response to defense counsel's emphasis during the trial upon the failure of agents to record more fully their observations of Fulton's actions and statements, the prosecutor stated: "Now let me tell you something; when you have got a dozen agents trying to catch a big dope peddler—." The prosecutor never finished his statement as, upon objection, the District Court admonished him to use "extremely temperate language in this area." Shortly thereafter, the prosecutor stated:

> "We need Mr. Torres in these kinds of cases. . . . This is dirty business, but you need the help of people like Mr. Torres in order to solve it. Trial attorneys trying one of the Manson murder trials said, 'When—'"

Upon objection, the District Court admonished the prosecutor to restrict himself to the facts of the case at hand.

The District Court did not abuse its discretion by refusing to grant Fulton's motions for a mistrial. In context, the prosecutor's first comment fell within the "reasonable degree of latitude" allowed in argument, *Tenorio v. United States,* 390 F.2d 96, 99 (9th Cir.), *cert. denied,* 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968), particularly since the comment was made in response to arguments of defense counsel. *United States v. Greenbank,* 491 F.2d 184, 188 (9th Cir.), *cert. denied,* 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974). Furthermore, the prosecutor was entitled to argue reasonable inferences from the evidence. *See, e. g., United States v. Windom,* 510 F.2d 989, 994 (5th Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 121, 46 L.Ed.2d 91 (1975) (prosecutor called the defendant a "con artist"); *United States v. Greenbank, supra.* The second statement arguably entailed a more serious impropriety. Nevertheless, the immediate objection by defense counsel and the District Court's responsive admonition to the prosecutor prevented, we think, the accrual of such prejudicial error as to require reversal. We note, moreover, that defense counsel does not maintain that he presented any motions for curative jury instructions, although the court did in fact afford him an opportunity to do so. The court instructed the jury in terms of the standard cautionary jury instructions. *See Frazier v. Cupp,* 394 U.S. 731, 735–36, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

### IV. Non-Compliance With Discovery

#### A. Agent Miller's Notes

■ Fulton complains that Agent Miller's trial testimony differed from his handwritten notes and that these notes were not supplied to defense counsel until the time for cross-examination. The discrepancy of which Fulton complains is slight. But in any event, Fulton fails to demonstrate, as he must, any prejudice. Counsel received and utilized the notes in his attempt to impeach Agent Miller without, apparently, feeling any need to move for a continuance.

#### B. Statement of Torres

Defense counsel was not provided with the recorded grand jury testimony of Torres. When counsel informed the District Court of the failure to turn over the grand jury transcripts, the court ordered them to be supplied forthwith. Again, no prejudice to Fulton has been shown.

#### C. Agent Sutton's Testimony

■ Agent Sutton testified concerning statements that Fulton had made to him after the arrest. These statements had not been recorded. Nor had the Assistant United States Attorney been made aware of these statements until just before Agent Sutton was presented as a witness. Miller also testified with respect to statements made by Fulton which did not appear in his notes.

Rule 16(d)(2), Fed.R.Crim.P., invests the District Court with broad discretion in handling failures to comply with discovery requests. The court may "permit the discovery, or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Accordingly, the District Court (1) accepted the prosecutor's repre-

sentation that he had just become aware of the conversations with Agent Sutton and (2) recessed the trial so that defense counsel could prepare his cross-examination in light of Sutton's direct testimony. Defense counsel proceeded to cross-examine Agent Sutton the next day without further comment and without submitting a motion for a continuance. An abuse of discretion has not been shown. Fulton's additional contention that his case resembles *United States v. Lewis,* 167 U.S.App.D.C. 232, 511 F.2d 798 (1975), wherein the prosecution *intentionally* withheld unrecorded statements by the defendant and then used these statements at trial to impeach the defendant's credibility and undermine a significant element of his defense, is without factual foundation.

We have carefully considered Fulton's additional allegations of errors involving the Jencks Act, 18 U.S.C. § 3500, the opinion in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and local Omnibus procedures. We conclude that these arguments, similarly, are without merit.

The judgments of conviction are therefore

AFFIRMED.