**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4983

DONALD LOUIS BARBER, a/k/a Duck,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                           No. 97-4988

RAYMOND JEROME FRANCIS, a/k/a
Raymond Rudone Ramsey,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CR-96-21)

Submitted: January 29, 1999

Decided: February 17, 1999

Before MURNAGHAN, ERVIN, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

David Belser, BELSER & PARKE, Asheville, North Carolina; James G. Middlebrooks, SMITH, HELMS, MULLIS & MOORE, L.L.P., Charlotte, North Carolina, for Appellants. Brian L. Whisler, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Donald Louis Barber and Raymond Jerome Francis of conspiracy to possess with intent to distribute and to distribute cocaine base in violation of 21 U.S.C. § 846 (1994), and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) (1994), and 18 U.S.C. § 2 (1994). Francis also was convicted of using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c) (West Supp. 1998). The district court sentenced Francis to a total of 384 months in prison to be followed by five years of supervised release.

Barber appeals his convictions on the grounds that the district court should have declared a mistrial or excluded testimony from Government witness Gloria Walker because the Government violated the discovery order and that the district court erred in limiting his counsel's cross-examination of Government witnesses Eustace Vanterpool and Terry Lee Landrum Howard. Francis appeals his § 924(c) conviction on the grounds that the Government failed to connect the gun to a drug transaction and failed to prove that the incident occurred in June 1993, as charged in the indictment. Next, Francis challenges his sentence, contending that the district court erred in determining that he was responsible for 1.5 kilograms of crack cocaine. Francis also has

2

moved to file a supplemental pro se brief challenging the district court's denial of his motion to dismiss the jury. Although we grant his motion, we reject his claim. Finding no reversible error, we affirm Barber's convictions and Francis' conviction and sentence.

I.

Barber first asserts that the district court should have declared a mistrial or excluded the testimony of Government witness Gloria Walker after the Government failed to disclose evidence in violation of Fed. R. Crim. P. 16(d)(2), and that the court's sanction for the Government's action was insufficient. Barber also asserts that the presentation of Walker's testimony prejudiced him because his counsel based his opening statement and trial strategy on the information contained in the Government's open file--specifically, that Barber's participation in the conspiracy did not begin until the last three months.

We review the district court's decision as to the appropriate remedy for a discovery violation for an abuse of discretion. See United States v. Hastings, 126 F.3d 310, 316 (4th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3605 (U.S. Apr. 6, 1998) (No. 97-1471); see also United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3861 (U.S. June 27, 1997) (No. 96-9103) (reviewing denial of motion of mistrial for abuse of discretion). The prosecutor admitted that he probably should have contacted defense counsel about Walker's interview implicating Barber in the conspiracy before the last three months but maintained that he did not withhold the information intentionally. See Hastings, 126 F.3d at 317 (outlining factors courts should weigh in determining sanction). Further, the court allowed Barber's counsel to review the Government's notes from Walker's interview and gave him time to prepare for cross-examination. See id.; United States v. Fulton, 549 F.2d 1325, 1328-29 (9th Cir. 1977) (finding no abuse of discretion in court's decision to remedy government failure to disclose evidence by recessing trial to provide defendant time to prepare cross-examination). Finally, the district court was well within its discretion to sanction the Government by ordering it to comply with the discovery order. See Fed. R. Crim. P. 16(d)(2). We therefore find no abuse of discretion. See Hastings, 126 F.3d at 316.

3

II.

Barber next contends that the district court erred by limiting counsel's cross-examination of Government witnesses Howard and Vanterpool in violation of his right to confront witnesses under the Sixth Amendment. Howard and Vanterpool each testified as to Francis' extensive involvement in the conspiracy. Vanterpool also testified that he saw Barber selling crack cocaine for Francis on one occasion. Barber's counsel thoroughly questioned Howard and Vanterpool regarding their plea agreements and the fact that they each may receive a lesser sentence for cooperating. Vanterpool also was questioned about his prior record and the state charges pending against him. When Barber's counsel attempted to discuss the sentencing guidelines and what specific sentences Howard and Vanterpool might have received, the Government objected. The district court sustained the objections.

We review limitations placed upon cross-examination by the district court for an abuse of discretion. See United States v. Cropp, 127 F.3d 354, 358 (4th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3491 (U.S. Jan. 26, 1998) (No. 97-7265). Barber's claim is foreclosed by our decision in Cropp. See id. at 359 (finding that probative value from jury's knowledge of actual number of years defendant faced outweighed by prejudicial impact). We therefore find no abuse of discretion.

III.

Francis first asserts that the evidence was insufficient to convict him of a § 924(c) offense because the Government failed to establish a connection between the gun and a drug transaction and to prove that the offense occurred in June 1993. In deciding whether the evidence was sufficient, the relevant question is not whether the court is convinced of guilt beyond a reasonable doubt, but rather whether the evidence, when viewed in the light most favorable to the government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868); Glasser v. United States, 315 U.S. 60, 80 (1942). If substantial evi-

4

dence exists to support a verdict, the verdict must be sustained. See Glasser, 315 U.S. at 80.

To sustain a conviction under § 924(c), the Government must prove that defendant (1) used or carried a firearm, and (2) did so during and in relation to a drug trafficking offense. See United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997). "A firearm is carried `in relation to' a drug trafficking offense if it has `some purpose or effect with respect to the drug trafficking crime' and if its presence was not `the result of accident or coincidence.'" Id. at 654 (quoting Smith v. United States, 508 U.S. 223, 238 (1993)).

Taking the evidence in the light most favorable to the Government, see Glasser, 315 U.S. at 80, and contrary to Francis' assertion, the evidence was sufficient to convict him.**1** Darren Angram testified that in April or May 1993, Francis arrived at Angram's house and displayed a gun to Michael Dougherty, a drug dealer, in a threatening manner to settle a prior dispute over a drug-related robbery. Angram testified that Francis robbed Dougherty and others in order to secure money to buy more drugs. Because the robberies occurred during the course of the conspiracy, the evidence was sufficient to establish that Francis used or carried the firearm during and in relation to a drug trafficking crime. See id.

Francis also contends that the evidence was insufficient because the Government did not prove that he used or carried a firearm in June 1993. Angram testified that he saw Francis with the gun in April or May 1993. Francis' claim fails because the crime occurred reasonably near the date charged in the indictment, the indictment fairly apprised defendant of the crimes with which he was charged, see United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993), and the date is not an element of the offense. See United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994). We therefore affirm Francis' § 924(c) conviction.

_____

**1** Francis does not challenge on appeal whether the evidence was sufficient to establish that he used or carried the firearm.

5

IV.

Francis claims that the district court erred in attributing 1.5 kilograms of crack cocaine to him on the grounds that the district court relied solely on unsupported conclusions in the presentence report and that the Government failed to prove that the drugs were crack. Francis disputed each amount in the presentence report and contended at sentencing that he should be held accountable for 937 grams of crack. In resolving Francis' objections, the district court independently concluded, based on a recollection of the trial testimony, that the conspiracy involved more than 1.5 kilograms of crack but did not make specific findings as to each disputed amount.

We review the district court's factual determinations as to drug quantity for clear error. See United States v. Love, 134 F.3d 595, 606 (4th Cir.), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3790 (U.S. June 15, 1998) (No. 97-9085). If defendant objects to a quantity recommended in a presentence report, the district court must make an independent resolution of the factual issues raised by the objection. See U.S. SENTENCING GUIDELINESMANUAL § 6A1.3 (1997); UnitedStates v. Williams, 152 F.3d 294, 300-01 (4th Cir. 1998). Finally, the government must establish the quantity of drugs attributable to defendant by a preponderance of the evidence and may do so through the introduction of relevant and reliable evidence. See United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994).

Although neither the presentence report nor the district court specifically summarized the trial testimony supporting the finding that Francis was responsible for 1.5 kilograms of crack, our review of the record discloses that the district court's finding was not clearly erroneous. According to the presentence report, an undercover officer made a purchase of crack from Francis in the amount of .6 grams, and Gloria Walker purchased 5.5 grams of crack. Walker also testified at trial that in July 1993 she and her uncle each purchased $150 of crack from the house where Francis conducted his drug activities. The $300 crack purchase may be converted to approximately one gram of crack.[2] See USSG § 2D1.1, comment. (n.12). Angram testified that he pur-

_____

[2] We base the amount per gram on Walker's testimony that she purchased 4.7 grams for $1300 (or $277 per gram).

6

chased from Francis nine ounces (or 255.15 grams) of crack during 1993 and 1994 and 500 grams of crack in late 1992. The amounts in this paragraph total 762.25 grams.

Other amounts testified to at trial must be estimated. In a case such as this, "`[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.'" United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994) (quoting U.S.S.G.§ 2D1.1, comment. (n.12)). The sentencing guidelines do not demand certainty and precision; they demand that a court do the best that it can with the evidence in the record, erring on the side of caution. See United States v. Cook, 76 F.3d 596, 604 (4th Cir. 1996); United States v. Uwaeme, 975 F.2d 1016, 1018-19 (4th Cir. 1992).

Vanterpool testified that from June until August 1995, he saw Francis cook powder into crack every day, except for nine days when Francis was out of town. When asked how much he cooked, Vanterpool responded one ounce. Assuming, as Francis contends, that he should be responsible for only twenty ounces from June to August and that it was powder, the converted amount for which he was responsible during that time is 498.96 grams of crack.**3**

Next, Walker testified that she saw Francis cook one ounce (or 28.35 grams) in 1993. Assuming that the cocaine was powder, the resulting amount of crack after conversion is 24.95 grams. Walker also testified that in late 1994 she purchased cocaine from Francis three to four times at one to two ounces each time. Using a conservative estimate of three times at one ounce of powder, the converted amount of crack is 74.84 grams. Walker testified that on other occasions she purchased crack from Francis about ten times and from Barber seven or eight times at $20-80 or $150 each time. Assuming seventeen purchases at $80 each, Walker purchased $1360 in crack. Converting $1360 to grams at $277 per gram, the resulting amount is

_____

**3** We determine this amount by first converting 20 ounces to grams at the rate of 1 ounce equals 28.35 grams, for a total of 567 grams. Because the testimony was unclear whether the one ounce was powder or crack, we assume it was powder and convert it to 498.96 grams of crack. See United States v. Ricco, 52 F.3d 58, 63 (4th Cir. 1995) (approving conversion ratio announced in United States v. Paz, 927 F.2d 176, 180 (4th Cir. 1991), that 100 grams of cocaine yields 88 grams of crack).

4.91 grams. Walker also testified that she observed Barber (Francis' co-conspirator) with $400-500 of crack. Converting $400 to grams yields 1.44 grams of crack. Walker also testified that on six other occasions she saw Francis cook powder to crack (about one ounce each time). Six ounces is 170.1 grams. Applying the conversion rate in <u>Paz</u> because Walker's testimony was unclear as to the type of drugs involved, the resulting amount is 149.69 grams of crack. The total from this paragraph equals 255.83.

Finally, Hart testified that he purchased crack from Francis three to four times at .25 to .5 ounce each time. Assuming a conservative estimate of .75 ounce, Francis was responsible for 21.26 grams. Hart also testified that he purchased crack from Francis one to two times at .5 ounce each time. Assuming a .5 ounce purchase, the resulting amount of crack is 14.18 grams. This paragraph totals 35.44 grams of crack.

Taking the amounts in the presentence report (6.1 grams), the definitive testimony at trial from Angram and Walker (756.15 grams), and the estimates from Vanterpool (498.96 grams), Walker (255.83 grams), and Hart (35.44 grams), Francis was accountable for 1552.48 grams of crack. We therefore find that the district court's finding that Francis was responsible for 1.5 kilograms was not clearly erroneous. <u>See Love</u>, 134 F.3d at 606.

As for Francis' claim that the Government failed to prove that the drugs were crack, Francis did not assert at sentencing or on appeal that the drugs were any other form of cocaine. Because Francis bears the burden of showing why the information in the presentence report is incorrect (mere objections are insufficient), this claim must fail. <u>See United States v. Terry</u>, 916 F.2d 157, 162 (4th Cir. 1990).

V.

Accordingly, we affirm Barber's convictions, Francis' convictions, and Francis' sentence. We grant Francis' motion for leave to file a supplemental brief and dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

8