**UNITED STATES of America, Appellee,**

v.

**Ernest James COLLINS, Appellant.**

**No. 77–1533.**

United States Court of Appeals,
Ninth Circuit.

Aug. 22, 1977.

Certiorari Denied Oct. 17, 1977.
See 98 S.Ct. 309.

Roger S. Ruffin, Fall & Ruffin, San Francisco, Cal., argued, for appellant.

James L. Browning, Jr., U. S. Atty., John C. Gibbons, Asst. U. S. Atty., San Francisco, Cal., argued, for appellee.

Before KILKENNY and ANDERSON, Circuit Judges, and CRAIG, District Judge.*

KILKENNY, Circuit Judge:

The appellant was indicted, tried by a jury, and convicted of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). We affirm.

## BACKGROUND

On November 3, 1976, Laverne Schultz, a teller at the Crocker National Bank, San Francisco, California, activated bank surveillance cameras as she was being robbed. An hour after the robbery, she and another employee, Matthew Parks, gave descrip-

---

* The Honorable Walter E. Craig, United States District Judge for the District of Arizona, sitting by designation.

tions of the robber to the Federal Bureau of Investigation [FBI]. The following day, Schultz and Parks also identified the man in the surveillance photographs as the robber. Since the identity of the robber was not yet known, the FBI distributed the surveillance photographs to various law enforcement officials.

On December 7, 1976, a correctional officer alerted the FBI when he concluded that the appellant was the man shown in these photographs. A six photograph photospread was prepared and ready for showing two days later. From the spread, Schultz identified the appellant's picture as the one who "could be the man who held me up." Parks identified the appellant's picture as "the most likely suspect." On the same day, an informant positively identified the appellant from the surveillance photographs and recognized the clothes he was wearing therein. The next day [December 10, 1976], the FBI, based upon an affidavit, obtained a search warrant for the appellant's apartment. They seized, *inter alia*, some shoes and a briefcase that were allegedly used in the robbery.

Additional facts necessary for disposition of the appellant's claims will be discussed below.

### ISSUES

I. Were the photographic identification procedures constitutionally infirm?

II. Were the shoes and briefcase erroneously admitted into evidence?

III. Did the trial court err in allowing the testimony of an expert in photographic comparison that in his opinion the shoes and briefcase found in the apartment were the same ones depicted in the surveillance photographs?

IV. Did the trial court err in its instructions on eyewitness identification?

### I.

The appellant suggests that the photographic identification procedures were so impermissibly suggestive as to taint the in-court identifications. He relies upon the alleged inconsistent descriptions given by Schultz and Parks to the FBI, consisting of the fact that neither commented upon his beard at the time of the robbery, and the fact that neither was able to identify him at a corporeal lineup [without his beard]. His claim is aptly summarized and disposed of by the trial court:

". . . Defendant contends that this photographic spread was impermissibly suggestive for three reasons: (1) three of the six Negro male individuals depicted appear to be significantly younger than defendant; (2) only defendant and two others appear to have afro-style haircuts; and (3) only defendant appears to have a beard.

An identification . . . must be suppressed when the line-up is so impermissibly suggestive as to result in a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377[, 88 S.Ct. 967, 19 L.Ed.2d 1247] (1968). In the case at bar, an examination of the photographic spread demonstrates that the pictures are not impermissibly suggestive. No significant difference in age is discernible in the photographs. Five out of six of the photographs depict individuals wearing hair styles similar to that of defendant. Half of the photographs depict individuals wearing beards. All of the photographs depict individuals with facial hair. . . ."

■ We have examined this photospread and agree with the trial court's finding, whether reviewable as fact or law, *United States v. Higginbotham*, 539 F.2d 17, 23 (CA9 1976), that the pictures are not impermissibly suggestive. The procedure was here necessary, *United States v. Calhoun*, 542 F.2d 1094, 1104–5 (CA9 1976), and not unduly suggestive, *United States v. Freie*, 545 F.2d 1217, 1224 (CA9 1976), *cert. denied* 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977). It follows *a fortiori* that there was no substantial likelihood of irreparable misidentification. *See Manson v. Brathwaite*, —— U.S. ——, 97 S.Ct. 2243, 53 L.Ed.2d 140 (6/16/77).

■ Even if there were some suggestiveness, we think that the in-court identifications are possessed of sufficient reliability to render them admissible. *Manson, supra,* at ——, 97 S.Ct. 2243. Beyond that, the factors urged by the appellant were considered by the jury and

". . . [w]e are content to rely upon the good sense and judgment of American Juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. . . ." *Id.* at ——, 97 S.Ct. at 2254.

This contention is without merit.

## II.

Under this assignment of error, the appellant makes the same arguments that he made below. In denying the motion to suppress, we think that the trial court correctly analyzed this issue.

■ On the appellant's claim that the facts in the affidavit are stale, and, therefore, insufficient to support a finding of probable cause, the trial court found the following:

"The bank robbery charged in the indictment occurred on November 3, 1976, and the search warrant in question was issued on December 10, 1976. Approximately six weeks elapsed between the bank robbery and the issuance of the warrant. However, defendant was not identified as the possible bank robber until December 7, 1976 [cite]. Further, it was not until December 9, 1976, that plaintiff was identified by an informant as owning the clothes which were worn by the bank robber. This informant also disclosed the defendant's address on that date [cite]. The test for judging the timeliness of a search warrant is whether there is sufficient basis to believe, based upon a continuing pattern of conduct or other good reasons, that the items to be seized are still on the premises. *Sgro v. United States,* 287 U.S. 206, 207 [, 53

S.Ct. 138, 77 L.Ed. 260] (1932). In the instant case, the affidavit states that the clothing to be seized was owned by defendant and that defendant was observed wearing the clothing on numerous occasions [cite]. These statements supply a sufficient basis to believe that the items sought by the warrant were located on the premises to be searched at the time the warrant was executed. The information contained in the warrant, therefore, was not stale."

As to the affidavit, we have viewed it in a common sense and nontechnical manner, *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and hold that the above findings are proper and fully supported by the case law. *See United States v. DiMuro,* 540 F.2d 503 (CA1 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977) [information in affidavit more than four months old]; *United States v. Rosenbarger,* 536 F.2d 715 (CA6 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United States v. Bowers,* 534 F.2d 186, 192 (CA9 1976), *cert. denied,* 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 [almost six weeks between crime and search warrant]; *United States v. Steeves,* 525 F.2d 33 (CA8 1975)[1] [information in affidavit more than 87 days old—warrant sought, *inter alia,* the clothes worn in the robbery]; *United States v. Rahn,* 511 F.2d 290 (CA10 1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 [information in affidavit nearly two years old].

■ The appellant also maintains that there was no probable cause for the search because the affidavit did not connect him with the premises to be searched, with the offense, or with the items to be seized. This claim is frivolous. *See United States v. Ventresca, supra.* As stated by the trial court:

". . . This claim is without merit. The affidavit identifies the clothing to be seized as having been worn by the bank

---

1. Disapproved on another point, *Scarborough v. United States,* —— U.S. ——, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).

robber. It identifies the defendant as owning the clothing, and links the clothing to his address [cite]. The affidavit also describes this clothing with particularity, along with a handgun, bait money, and a folding case [cite]."

Based upon the detailed recitations in the affidavit, and the fact that the FBI agents had independently observed the appellant enter the apartment that was to be searched, we hold that there was probable cause to believe that the challenged items [the shoes and the briefcase] would be in the appellant's residence. *See Steeves, supra,* 525 F.2d at 38. They were, therefore, properly admitted in evidence by the trial court.

### III.

FBI Agent Avignone, an expert in the field of questioned documents and photographic comparison, testified during the course of the trial that the shoes and briefcase found in the search were "most probably" the same as those depicted in the bank surveillance photographs. The appellant relies upon *United States v. Burke,* 506 F.2d 1165 (CA9 1974), *cert. denied,* 421 U.S. 915, 95 S.Ct. 1576, 43 L.Ed.2d 781 (1975), for the proposition that this was reversible error to so encroach upon the province of the jury.

In *Burke,* the court found error, albeit nonprejudicial, in allowing the testimony of an expert comparing photographs of the defendant taken after his arrest with photographs taken by the bank surveillance cameras. His testimony related to similarities in physical characteristics and wearing apparel, matters the court felt were "within the province and capability of the jury guided by argument of counsel on both sides." *Id.* at 1170.

■ Avignone's testimony here was technical/specialized, *cf. United States v. Green,* 525 F.2d 386, 391–2 (CA8 1975) [same witness], and clearly helpful to the jury. Rule 702, F.R.E., did not become effective until after the disposition of the cases relied upon by the appellant and it authorizes the procedure here employed. After detailing the qualifications of Agent Avignone as an expert in photographic comparison and examination of questioned documents, the government submitted the witness as an expert. The appellant declined the opportunity to cross-examine on the qualifications of the witness. It is clear from the record that the trial court found that the witness did qualify as an expert. We cannot say that there was an abuse of discretion. *Burlington Northern Inc. v. Boxberger,* 529 F.2d 284 (CA9 1975); *United States v. Oliver,* 525 F.2d 731 (CA8 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976).

■ Moreover, the testimony of Pamela Alexandra, the appellant's one time housemate, clearly associates the appellant with the shoes under scrutiny and with the surveillance photographs. She recognized the shoes and the jacket worn by the appellant in the surveillance photographs. After an examination of the shoes at trial, she told the jury that she had seen the appellant drip that color yellow paint on them when they were painting their kitchen [the same paint drips compared by Avignone]. Additionally, she specifically identified, from the surveillance photographs, various facial and physical characteristics of the appellant. Consequently, if there was an error in the admission of Avignone's testimony, it was harmless under the provisions of Rule 52(a), F.R.Crim.P. *See also United States v. Pratt,* 531 F.2d 395 (CA9 1976) [same witness]; *United States v. Brown,* 501 F.2d 146 (CA9 1974), *reversed on other grounds,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United States v. Trejo,* 501 F.2d 138 (CA9 1974).

### IV.

The appellant requested detailed instructions on identification testimony, the so-called "Telfaire" instruction, *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (1972). A part of this instruction was given by the trial court, but the appellant claims that the court erred in not giving his requested instruction in full.

■ At the outset, the appellant is confronted with the well established rule that the giving of jury instructions on identification rests largely within the discretion of the trial judge. *See, e. g., United States v. Sambrano*, 505 F.2d 284, 286 (CA9 1974), *cf. Trejo, supra*, 501 F.2d at 140. Moreover, this court has repeatedly declined to require the use of the *Telfaire* instruction. *See United States v. Masterson*, 529 F.2d 30, 32 (CA9 1976), *cert. denied* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976).

■ We find the above authority controlling. The trial court went beyond that which was approved in *Masterson* by admonishing the jury that identification testimony "should be considered with great caution and weighed with great care." There can be no abuse of discretion under these circumstances.

### CONCLUSION

The appellant had a fair trial in the district court. The judgment of conviction must accordingly be affirmed.

IT IS SO ORDERED.