BRUCE CARPENTER *v.* STATE OF INDIANA

[No. 3-776A160. Filed August 2, 1978.]

*Stephen R. Carlson, Smith and Carlson,* of Auburn, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

GARRARD, P.J. — Carpenter was tried by jury and convicted of theft. The evidence disclosed that at about 3:30 p.m. on October 31, 1974, Carpenter entered Carbaugh's Jewelry in Auburn, Indiana, for the second time that day. At the time the salesclerk was occupied with Althea Sexton, the woman with whom Carpenter had been living for some three years. As the clerk went to the back of the store with Sexton to prepare a claim check for a clock that was to be repaired, she observed Carpenter lean over a display case containing diamond rings, reach into the case and then withdraw his hand and put it in his pocket. The clerk called out at Carpenter and called to the store owner for help. Carpenter ran from the store and managed to elude the store owner, who gave chase. The police were called and given Carpenter's description. It was acertained that rings valued at nearly ten thousand dollars ($10,000) were missing.

Shortly thereafter Carpenter was arrested by a county policeman who had heard the reported theft and description of Carpenter broadcast by police radio. An hour or two later police located a number of the diamond rings in an automobile Carpenter had been using that day. When these were displayed to Carpenter he agreed to give a written confession and disclose the whereabouts of the remaining gems if the police would agree that charges would not be pressed against Sexton as an accessory.

On appeal Carpenter asserts that evidence of the recovered jewels as well as his confession should have been excluded at trial. He also contends he was entitled to discharge pursuant to Indiana Rules of Procedure, Criminal Rule 4 for delay in commencing his trial. We find there is no reversible error.

## I. Motion for Discharge

Carpenter was arrested the day of the crime. Formal charges were instituted on November 4th, and the time limits of CR. 4 began to run

on that date. On December 15, 1974, Carpenter escaped from the DeKalb County jail. He was returned to custody May 23, 1975. After some delay his trial commenced January 15, 1976.[1]

Pursuant to CR. 4(C) Carpenter was entitled to be brought to trial within one (1) year. That period was extended by the time he was free as an escapee pursuant to CR. 4(F). Thus, for purposes of CR. 4(C), when Carpenter's trial commenced there were nearly three months remaining before he would be entitled to discharge.

He argues, however, that the January trial date violated the requirement of CR. 4(A) which provides that a defendant be released on his own recognizance if he has been held in jail without trial for more than six (6) months. He urges that discharge is the only viable remedy if a defendant is not released from jail at the expiration of the six month period. We disagree. Moreover, the history of CR. 4(A) clearly demonstrates a contrary intent, and our Supreme Court so held in *Collins v. State* (1977), 266 Ind. 430, 364 N.E.2d 750; *see also Lewis v. State* (1976), 264 Ind. 288, 342 N.E.2d 859.[2]

## II. Admissibility of Fruits of the Crime

Carpenter first argues that evidence concerning the gems and their recovery should have been excluded because the probable cause affidavit which was filed on November 4th in support of the information and warrant request was defective. We need not consider the specifics of this affidavit since it did not provide the basis for securing the evidence in question. Carpenter was arrested on October 31st without a warrant and the facts were sufficient to establish probable cause.[3] The evidence he seeks to exclude was secured as the result

---

1. Since they are not outcome determinative, we need not consider how much, if any, of this delay was chargeable to Carpenter.

2. Prior versions of the rule provided for discharge if a defendant held in jail was not brought to trial within six months. That was changed in favor of the present language by the amendment which became effective in 1973: "Any defendant so detained shall be released on his own recognizance at the conclusion of the six (6) month period aforesaid and may be held to answer to a criminal charge against him within the limitations provided for in subsection (C) of this rule."

3. Appellant also argues for the first time on appeal that the actual warrantless arrest was invalid. However, that contention has been waived. *Johnson v. State* (1975), 167 Ind.App. 292, 338 N.E.2d 680.

of that arrest four days before the affidavit he challenges was filed. Accordingly, the arrest was valid and evidence secured as a result thereof was admissible regardless of whether the subsequently filed affidavit was sufficient. *Mendez v. State* (1977), 267 Ind. 67, 367 N.E.2d 1081; *DeWeese v. State* (1972), 258 Ind. 520, 282 N.E.2d 828.

Appellant's principal contention, and that presented in the motion to suppress heard by the trial court, is that the state lacked probable cause to make a warrantless search of the vehicle from which the first portion of jewelry was recovered.

Carpenter was arrested around 4:00 p.m. About 5:15 p.m. two police officers, who had returned to the scene seeking a hat Carpenter was wearing when he was in the jewelry store, located a green station wagon parked at a meter about seventy-five feet from the jewelry store. Upon entering the vehicle one of the officers discovered the rings in a shoe on the passenger side of the vehicle. It is undisputed that Carpenter had borrowed the vehicle for the day from its owner, and that no one had consented to a search of the vehicle.

Carpenter moved to suppress the evidence on grounds of an unconstitutional search and after hearing, the court denied the motion. When the evidence was offered at trial Carpenter again objected. It appears that evidence offered by the state at the suppression hearing was inadequate to establish probable cause for a search. However, considerable additional evidence was introduced at the trial bearing directly upon the probable cause requirement. Thus, the question we must first determine is what evidence may we look to in order to judge whether reversible error was committed?

Of course, there is abundant authority that precludes evidence introduced after a ruling from rendering the ruling *incorrect ab initio.* These cases proceed on the basis that a party has the burden of establishing the basis for his objection and if he neglects to do so he may not complain of the result. *See, e.g., State v. Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874; *Morgan v. State* (1923), 194 Ind. 39, 141 N.E. 790. Here the question is the reverse:   May evidence produced after the ruling on a motion to suppress be considerd to *sustain* the ruling admitting the evidence? .

Three reasons persuade us the evidence should properly be considered.

First, the primary objectives of our legal system are to afford litigants a fair trial and to reach a just result. Where the record demonstrates the result was just, procedural or evidentiary irregularities ██ may be overlooked where the defendant had a fair, although not a perfect, trial. An illustration close to the present context arises in cases where evidence is admitted over proper objection although a proper foundation to establish its admissibility had not been laid when the evidence was offered. If the necessary foundation is later made to appear, the question is deemed to be merely one of the order of proof and the ruling will be upheld since the record as a whole demonstrates the evidence was properly admissible. *See, e.g., Beeler v. State* (1952), 230 Ind. 444, 104 N.E.2d 744; *Dixon v. State* (1945), 223 Ind. 521, 62 N.E.2d 629.

Secondly, the ruling on a pre-trial motion to suppress is not intended to serve as the final expression concerning admissibility. Not only must an objection be made when the evidence is offered at trial in ██ order to preserve error, *Pointon v. State* (1978), 267 Ind. 624, 372 N.E.2d 1159, but the court may hear additional evidence regarding admissibility and reconsider its earlier ruling. *See, e.g., Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811; *Carson v. State* (1975), 164 Ind. App. 24, 326 N.E.2d 624.

Most importantly, however, the very purpose of the exclusionary rule would not be served by failing to consider such evidence. One must recall that there is nothing inherently untrustworthy or suspicious ██ about the evidence sought to be excluded by such motions. Ordinarily, the case is quite the contrary. The purpose of the rule excluding the fruits of an unconstitutional search or seizure is to attempt to dissuade government agents from indulging in unconstitutional conduct by denying them the ability to profit from such activity. *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. However, that prophylactic effect has no bearing where the search was, in fact, constitutionally proper but the facts were not sufficiently brought forth at the initial hearing. To exclude the evidence under such circumstances when the record at trial adequately discloses a permissible search would

provide no deterrence to erroneous police conduct but permit all the adverse consequences attending the exclusion of evidence necessary or helpful in convicting the guilty. *See Stone v. Powell* (1976), 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, *reh. den.* 429 U.S. 874.

As the United States Supreme Court stated in *Carroll v. United States* (1925), 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543:

> "Counsel finally argue that the defendants should be permitted to escape the effect of the conviction because the court refused on motion to deliver them the liquor when, as they say, the evidence adduced on the motion was much less than that shown on the trial, and did not show probable cause.
>
> * * *
>
> If the evidence given on trial was sufficient, as we think it was, to sustain the introduction of the liquor as evidence, *it is immaterial that there was an inadequacy of evidence when application was made for its return.* A conviction on adequate and admissible evidence should not be set aside on such a ground."

(Emphasis added)

Accordingly, we hold the admissibility of the evidence may be properly sustained upon the basis of the evdience produced at the suppression hearing and at defendant's trial.

That evidence disclosed the following information known to the police officers when they searched the vehicle:    The theft occurred about 3:30 p.m. and when Carpenter was arrested about an hour later he had none of the jewelry in his possession. Shortly after Carpenter's apprehension police returned to the area of the jewelry store seeking a black hat that he had been described as wearing. They noticed a black automobile circling the area. The occupants of the car seemed to be looking for something. The police stopped the car and questioned its occupants. One of the occupants told police she was present when Carpenter arranged to borrow the green station wagon for the day; that he had borrowed the car; and that she had noticed it parked near Oberlin's TV and Appliance Store which was only about seventy-five feet from the jewelry store. When the officers checked they found the vehicle in question. They did not know whether others were involved in the theft, nor who had access to the station wagon. Under these cir-

cumstances they had probable cause to search the car at that time. The evidence was therefore properly admitted.

### III. Admissibility of Confession

Finally, Carpenter asserts that his written confession was inadmissible because the police officers did not scrupulously honor his request to confer with an attorney before interrogation and because he was induced to confess through fear that Sexton would be charged. Therefore, he argues, it was error to permit any in-trial reference to his confession and to admit in evidence the hat and photographs of the jewelry to which he had led the police after confessing.

We find the allegations present nothing for our review. The written confession was not offered in evidence. When photographs of the jewelry were offered, they were objected to but not on grounds that they were the fruit of an involuntary confession.[4] No objection was made when the hat was introduced. Nor was objection made to any of the testimony of Officer Bartels who recounted the events that occurred after Carpenter's arrest, including the giving of the confession. In the absence of any objection to the evidence when offered, it was properly admitted. *Pointon v. State* (1978), 267 Ind. 624, 372 N.E.2d 1159.

The judgment is affirmed.

Robertson, J. (sitting by designation) Concurs;

Staton, J., Concurs in Result and files separate opinion.

### CONCURRING IN RESULT

STATON, J.—I concur in the result. Carpenter did not have standing to object to the search of the automobile resulting in the recovery of some of the diamond rings stolen. Carpenter was not the owner of the automobile and was not in possession of it at the time it was searched. As to the confines of the automobile he had no reasonable expectation of freedom from governmental intrusion. Possession of the diamond

---

4. Photographs of the diamonds were used at trial. The jewelry itself had been returned to Carbaugh's.

rings, moreover, was not an essential element of Carpenter's offense. The automobile's owner, Tackett, would have had standing in the circumstances presented, but Carpenter could not base his Fourth Amendment claim on an alleged violation of Tackett's rights. It is therefore inappropriate here for Judge Garrard to resolve whether evidence produced subsequent to an erroneous Fourth Amendment ruling can be considered on appeal to sustain the ruling.

## I.

### Standing

The Supreme Court of the United States determined in *Jones v. United States* (1960), 362 U.S. 257, that an individual's standing to challenge a search and seizure may be predicted on one of two bases: (1) standing exists where possession is an essential element of the offense charged, or (2) where the individual has a possessory or proprietary interest in the premises. 362 U.S. at 263. Title to the premises is not a legal requisite, *United States v. Jeffers* (1951), 342 U.S. 48, and the *Jones* Court extended the bounds of "possessory interest" to "anyone legitimately on premises where a search occurs . . . where its fruits are proposed to be used against him." 362 U.S. at 267. *See also Mancusi v. DeForte* (1968), 392 U.S. 364; *Paxton v. State* (1970), 255 Ind. 264, 263 N.E.2d 636 (passenger in automobile had standing to challenge search of it, so long as "legitimately on premises").

In *Katz v. United States* (1967), 389 U.S. 347, the Supreme Court indicated further that standing depended not upon a property right in the invaded place, but upon whether the area was one in which there existed a reasonable expectation of freedom from governmental intrusion. 389 U.S. at 352. The petitioner in *Katz* was held to have such a reasonable expectation in a public telephone booth which the Government had wiretapped. A union official in *Mancusi v. DeForte* (1968), 392 U.S. 364, similarly had a reasonable expectation of freedom from governmental intrusion in his union office, shared by co-workers, though the office and union records therein were subject to access by other union officials. 392 U.S. at 369. The Indiana Supreme Court adopted this "reasonable expectation" measure of standing in *Mitchell v. State* (1972), 259 Ind. 418, 287 U.S. 2d 860, and Mr. Justice Hunter wrote in *Burton v. State* (1973), 260 Ind. 94, 292 N.E.2d 790, that a "possessory interest"

in the context of Fourth Amendment standing is one which gives rise to a reasonable expectation of freedom from governmental intrusion upon those premises in addition to legal possession or ownership of the searched premises. 260 Ind. at 106 n.1, 292 N.E.2d at 798 n.1.

In *Brown v. United States* (1973), 411 U.S. 223, the Supreme Court addressed the question whether petitioners had standing to challenge the search and seizure of merchandise stolen, illegally transported and stored by them on the premises of a co-conspirator. Unlike circumstances extant in *Jones,* the Government's case against the petitioners in *Brown* did not depend upon the petitioners' possession of the seized evidence at the time of the contested search and seizure. 411 U.S. at 228. And, unlike the defendants in *Jones, Katz* and *Mancusi,* the petitioners in *Brown* were not present at the time of the governmental intrusion; they were in police custody in an adjacent state. The Court affirmed their convictions for transporting and conspiring to transport stolen goods in commerce and ruled that they had no standing to contest the search. 411 U.S. at 229. The Court held:

> "[T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." *Id.*

Carpenter argues that he had standing to challenge the search because the automobile's owner, Tackett, gave him the use of the automobile for the day. He maintains that although he was not the owner of the automobile, and although he was in custody at the Auburn police station at the time of the search, he nevertheless had a "right to possess" or "right to control" the automobile. The success of such an argument would depend upon whether a court is compelled to consider different degrees of or the nature of legal interest in determining if a defendant has standing. For example, should a court afford standing to a lessee of a vehicle, yet deny standing to a bailee? In *Jones* the Court responded to this argument:

> "The necessary quantum of interest [for conferral of standing] has been distinguished as being, variously, 'ownership in or right to

possession of the premises' . . . the interest of a 'lessee or licensee' . . . or of one with dominion. . . . We do not lightly depart from this course of decisions by the lower courts. We are persuaded, however, that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than any other branch of law, has been shaped by distinctions whose validity is largely historical. . . . Distinctions such as those between 'lessee,' 'licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards." 362 U.S. at 266.

This conclusion was affirmed in *Katz,* wherein the Court held that it was the reasonable expectation of freedom from governmental intrusion, and not a property interest in the premises, which conferred standing. 389 U.S. at 352. Conferral of standing upon Carpenter in the instant case must be based on his reasonable expectation of freedom from governmental intrusion, or his legitimately being in the automobile at the time of the search, and not because of an alleged, "right to possess" property interest in the automobile.

Fourth Amendment rights are personal ones which, like some other constitutional rights, may not be vicariously asserted. *Simmons v. United States* (1967), 390 U.S. 337; *Jones v. United States, supra.* The search of a third party's property or home, even if without probable cause, cannot be the basis of a claim by a defendant for the exclusion of evidence obtained thereby. *Kirkland v. State* (1968), 249 Ind. 305, 232 N.E.2d 365 (defendant, passenger in codefendant's automobile, held to have no standing to challenge search of automobile); *Kendrick v. State* (1975), 163 Ind.App. 555, 325 N.E.2d 464 (defendant, in passenger seat of codefendant's automobile, held to have no standing to object to search of it); *Butler v. State* (1972), 154 Ind.App. 361, 289 N.E.2d 772 (defendant, standing next to automobile he neither owned nor "was in control of;" had no standing to contest search of it). *See also Payne v. State* (1976), 168 Ind.App. 394, 343 N.E.2d 325.

I conclude that Carpenter had no standing to challenge the search of Tackett's automobile. The record reveals that Carpenter was not the

owner. He was not in possession of the automobile at the time of the search, or even at a reasonable time prior to the search. Rather, Carpenter was in custody at the Auburn police station at the time of the search. In his motion to suppress Carpenter alleged no proprietary or possessory interest in the automobile; his motion contains only the bearest of allegations.[1] While in police custody he alleged no possessory interest in the automobile, and at hearing on his motion to suppress Carpenter made no attempt to show the extent of his use of the automobile.[2] In these circumstances the belief does not obtain that Carpenter enjoyed an interest in Tackett's automobile sufficient to afford him a reasonable expectation of freedom from governmental intrusion. In addition, his claim to standing fails under that standard announced in *Brown v. United States, supra.* Possession of the diamond rings was not an essential element of Carpenter's offense. I would thus uphold the search and seizure in the instant case on the basis that Carpenter lacked standing to challenge it, and not upon the basis that an erroneous Fourth Amendment ruling at a suppression hearing can be validated by facts surfacing at trial.

NOTE—Reported at 378 N.E.2d 908.

---

1. The substance of Carpenter's motion read:

"In support of this motion, defendant would state:

1. That the State of Indiana searched a car on East 7th Street, between Main and Cedar Streets, in the City of Auburn, County of DeKalb, State of Indiana, without a search warrant and obtained property therefrom as a consequence of an unlawful search and seizure."

The State of Indiana, in its response to Carpenter's motion and at the hearing on Carpenter's suppression motion, alleged that Carpenter lacked standing to challenge the search and seizure. *See Combs v. United States* (1972), 408 U.S. 224.

2. *Cf. United States v. Burke* (9th Cir. 1974), 506 F.2d 1165. Burke was arrested by FBI agents in connection with two bank robberies as he was driving a Chevrolet van. Burke's brother was the record owner of the van, and he gave FBI agents permission to search it. A search revealed guns related to the bank robberies. Burke objected to the search. The Government contended Burke lacked standing to object. The district court concluded that "regardless of who owned the van, the defendant used it extensively." 506 F.2d at 1171. The Ninth Circuit agreed and concluded: "As a result of his repeated use of the van, the appellant had a reasonable expectation of privacy and freedom from search in the use of the van." *Id.*